FILED

2008 FEB -8 P 1:20

U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT

COURT FOR THE CENTRAL DISTRICT OF CONNECTICUT

JASON COX,
Plaintiff,
-vs-
UNITED STATES OF AMERICA,
Respondent.

Case No.: 00-CR-69

Motion For Leave To A mend 28 U.S.C. §2255
Motion To Vacate, Set Aside, or Correct Sentence

As a matter of introduction, the Petitioner Mr. Cox, appearing through pro se representation and now respectfully moves this Honorable Court to file an Amendment to his initial 2255 Motion to Vacate, Set Aside or Correct Sentence pursuant to the Federal Rule of Civil Procedure, Rule 15(c). However, leave to amend shall be freely given when justice so requires.

A memorandum brief in support of this motion is made part of this motion by reference herein.

Memorandum In Support
Of The Petition To Amend

Procedural History

Petitioner's initial §2255 Motion To Vacate, Set Aside, or Correct Sentence was filed on or about April 21, 2003. The government submitted a motion representing the government's response to defendant's motion pursuant 2255 more than once and this Court still has not ruled upon its merits.

However, Movant submits this motion to Amend his initial §2255 as that he would be allowed the pro se opportunity to prevent

further injustice upon the said district court.

Reasons For Granting Movant's Request
To File a Motion To Amend His Initial
2255

Reason Number One

Movant is Actually Innocent of the Government's theory that Mr. Cox uses a firearm by trading drugs to the Government's star witness Mr. Thomas Marazita in exchange for his own personal 357 firearm in view of the Supreme Court's new interpretation of what classifies the Use Prong of 924(c)(1)(4) in Watson v United States.

Reason Number Two

Petitioner's Sentence Enhancement under the Crack Cocaine Guidelines should be Set Aside and Corrected in view of his Sixth Amendment Right to a Jury Trial in light of Apprendi v New Jersey, Blakely v Washington, and Kimbrough v United States, or in the alternative Grant Movant his Two-point Reduction under the new Guideline Amendment to the Crack offenses.

Reason Number Three

For the Court to make the factual finding that Movant distributed Crack Cocaine alleged by the Court and Government and to consider that fact in determining his sentence would violate the principles of the Ex Post Facto and the Sixth Amendment.

Standard Of Review

Issue Number One

Movant is Actually Innocent of the Government's theory that Mr. Cox uses a firearm by trading drugs to the Government's star witness Mr. Thomas Marazita in exchange for his own personal 357 firearm in view of the Supreme Court's new interpretation of what

classifies the Use Prong of 924(c)(1)(A) in Watson v United States.

Summary Of Trial Evidence:

Count 13 of the superseding indictment alleges that on or about June 20, 1998, Cox possessed with the intent to distribute and distributed cocaine base. Count 14 alleges that on or about June 20, 1998, Cox used and carried a firearm, specifically a Sturm Ruger Model Speed Six, 357 caliber revolver, serial #15304402 (.357) in connection with the drug trafficking offense alleged in Count 13.

To prove these charges at trial, the government offered the testimony of Mr. Thomas Marazita. Marazita testified that he was addicted to crack cocaine, and that he purchased crack from Cox. He also stated that he owned the Sturm Ruger Model speed six, .357 caliber revolver. He said that, on several occasions before June 20, 1998, he had pawned the .357 to get money to buy crack. He also said that he often gave the .357 to Cox as collateral in exchange for crack, and that Cox would return the .357 after Marazita paid him.

Marazita also testified that he again pawned the .357 sometime before June 20, 1998, and that he repurchased it from the pawn shop on June 20, 1998. The pawn shop records also reflect that Mr. Marazita repurchased the .357 on June 20, 1998.

Marazita further testified that he gave Cox the .357 sometime in the summer, 1998, in exchange for crack and that Cox never returned the gun back to him. He later said that he gave Cox the .357 in July, 1998, and never got it back. In a taped conversation between marazita and Cox that occurred on February 10, 2000, Cox

stated, in response to Marazita's inquiry, that he no longer had the .357 because he "got rid of it".

Thus, there was no more evidence to further substantiate Mr.Cox 924(c)(1)(A) conviction.

The Law:

In the present case at hand, Mr. Cox argues that under the new interpretation of what classifies as a person being convicted under title 18 U.S.C. 924(c)(1)(A) within the "Use" prong in view of Watson v United States, case no: 06-571. Movant's conviction must be set aside and corrected. See, Davis v United States, 41 L.Ed.2d 109. However, in Davis, the highest court in the land has made it perfectly clear that since a prior determination of an issue on direct appeal from an applicant's conviction does not preclude his application for post conviction relief under 28 U.S.C.S. §2255 if new law has been made since the trial and appeal, it is error to hold that "the law of the case" as determined in an earlier appeal from the applicant's conviction, precludes him from securing relief under 2255 on the basis of an intervening change in law.

Furthermore, in Watson, the Supreme Court has held for the first time that: a person does not "use" a firearm under 18 U.S.C. §924(c)(1)(A) when he receives it in trade for drugs. In addition to such a holding Movant's case is in complete harmony of that of Michael A. Watson, where here in Mr. Cox's case, the government relied upon the very same drug for gun trade to uphold his present conviction of violating §924(c)(1)(A). However, the question before the Court in Watson was whether a person who trades his drugs for a gun "uses" a firearm "during and in relation to"... a drug trafficking crime within the meaning of 18 U.S.C. §924(c)(1)(A). The

Supreme Court held that he does not.

In the case at bar, the Government's position that Mr. Cox "used" the pistol under 924(c)(1)(A) by receiving it for narcotics lacks authority in either precedent or regular english. A boy who trades an apple to get a granola bar is sensibly said to use the apple, but one who would never guess which way this commerce actually flowed from hearing that the boy used the granola. Cf. United States v Stewart, 246 F.3d 728, 731 (D.C. Cir. 2001)(When a person pays a cashier a dollar for a cup of coffee in the court house cafeteria, the customer has not used the coffee. He has only used the dollar bill. So, when Mr. Cox handed over the drugs for the pistol, the informant or star witness Mr. Marazita "used" the pistol to get the drugs, just as the Appeals Court for the Second Circuit has held, but regular speech would not say that Mr. Cox himself used the pistol in the trade. "A seller does not "use" a buyer's consideration". (It shall be noted also that Mr. Cox never did use Mr. Marazita's .357 as a form of collateral, where here the Appeals Court has overlooked the fact that it was Mr. Marazita who had used the firearm as collateral to receive the drugs). In other spoken words, a person could say that Mr. Cox did take the gun as a form of collateral but never could they say that he was the one that used the gun as collateral to facilitate the offense. "A seller does not use a buyer's consideration". United States v Westmoreland, 122 F.3d 431, 436 (1997). Moreover, the Supreme Court has said it best: Whatever, the tension between the prior result and the outcome here, law depends on respect for language and would be served better by statutory amendment (if Congress sees asymmetry) than by racking statutory language to cover a policy it fails to cover and reach. (It shall also be

noted that the Supreme Court has also made it clear that "the first possessor is the one who "uses" the gun in the trade, and there is thus no cause to admonish us to adhere to the paradigm of a statute "as a symmetrical and coherent regulatory scheme, ... in which the operative words have a consistent meaning throughout. See, Watson v United States, case no: 06-571 (December 10, 2007).

For the above states reasons Mr. Cox's 924 (c)(1)(A) conviction must be set aside and vacated in light of the U.S. Supreme Court's substantive change in the law within the new Watson 924(c) interpretation.

Issue Two

Petitioner's sentence enhancement under the Crack Cocaine Guidelines should be set aside and corrected in view of his Sixth Amendment Right to a Jury Trial in light of Apprendi v New Jersey, Blakely v Washington, and Kimbrough v Unites States or in the alternative, grant Movant his Two-point Reduction under the New Guideline Amendment to the Crack Offenses.

Part (A):

In Petitioner's case, the facts encompassed in his jury verdict (or that in which a jury would have been required to find in order to convict), permitted a sentence of between 37 and 53 months. The Federal Sentencing Guidelines for powder cocaine and not the harsher sentence for "crack cocaine" sentencing scheme. The sentence Mr. Cox actually received was nine third longer. However, under the U.S. Constitution, this increased sentence could be imposed only upon proof of additional facts. As this case illustrates, those facts can be found by a judge, not a jury, and by a preponderance of the evidence rather than beyond a reasonable doubt. The United

States Supreme Court has held that Apprendi does apply in these circumstances.

In the case at hand, there is no evidence to say that the jury found Mr. Cox guilty of more than a "detectable amount" of cocaine base. (See, Jury Instructions) Mr. Cox argues that after following and applying the Sentencing Guidelines for powder cocaine and not the harsher 21 U.S.C. §841(b)(1)(A) sentencing scheme in regards to the crack cocaine sentencing enhancement, the maximum term of imprisonment that would be authorized if Movant had been found guilty and convicted of by proof beyond a reasonable doubt standard with regards to a detectable amount of cocaine base, where under the sentencing range in the guideline. The possession with the intent to distribute a controlled substance caused by a Detectable Amount of cocaine base that's not found to be proven as "crack cocaine" has a base offense level of 12. See, the U.S. Sentencing Commission Guideline Manual 2D1(Nov. 2001).

With even considering the extensive criminal history category of VI, Mr. Cox's statutory Maximum would be 37-46 months. See, Blakely v Washington, Case no. 02-1632. The Court found and the Supreme Court has agreed that regardless of whether the judge's authority to impose the enhanced sentence depends on a judge's finding of a specified fact, one of several specified facts, it remains the case that the jury's verdict alone does not authorize the sentence.

Furthermore, in the case at hand, the trial judge and not the jury had determined the actual drug quantity, which was in complete violation of Mr. Cox's Sixth Amendment Right to a jury trial. Movant argues that the enhancement for "crack cocaine", Leadership

Role, and the drug quantity must be held invalid under Apprendi and Blakely. The Supreme Court made it perfectly clear that if this was the law at the time of Mr. Cox's trial, than such relief must be granted. Moreover, the Supreme Court in Bunkley v Florida, 155 L.Ed 2d 1046, decision has also made it perfectly clear that if the exception in Booker, is a correct statement of the law when Mr.Cox's conviction has become final, than "Retroactivity" is not an issue. Therefore, Mr. Cox's sentence must be vacated.

Part(B):

In light of Kimbrough v United States, Mr. Cox asks this Honorable Court to re-sentence him in accordance with the powder cocaine Guideline, or in the alternative, grant him his Two-point reduction for crack cocaine related offenses according to the new amendment.

Under United States v Booker, 543 U.S. 220, this court now has the power to not follow the "crack cocaine" harsher penalties when sentencing a person under the new federal guideline regime. The Crack Cocaine Guidelines are like all other guidelines, advisory only. However, in the Kimbrough case when sentencing the defendant, the district court began by properly calculating and considering the advisory guideline range. It then addressed the relevant §3553(A) factors including the Sentencing Commission's reports criticizing the 100:1 ratio. Finally, the court did not purport to establish a ratio of its own, but appropriately framed its final determination in line with :3553(A)'s overarching instruction to impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in §3553(A)(2).

Here, in the present case, Mr. Cox asks this Honorable Court

to use the same approach as the Fourth Circuit district court trial judge performed upon Kimbrough at his sentencing stage. Giving due respect to the District Court's reasoned appraisal, a reviewing court could not rationally conclude that the 4.5 year sentence reduction Kimbrough received qualified as an abuse of discretion. Moreover, Mr. Cox further asks this court to take Judicial Notice of the new guideline amendment for all crack cocaine offenses that's been handed down by the Sentencing Commission Nov. 1, 2007, and made Retroactive on or about March 1, 2008.

In addition to such Retroactive Guideline Amendment, Mr. Cox stands upon the position that he now must be sentenced under the "advisory Sentencing Guideline Regime" and not the use of madatory Guideline's during the time frame of his own sentencing by this district court. See, United States v Hicks, 472 F.3d 1167 (2007 9th Cir.) The Sentencing Commission adopted, pursuant to 28 U.S.C. §994(0), an explicit retroactive amendment modifying U.S. Sentencing Guidelines Manual §2K2.4, cmt, application n.2 (2000), eliminating a two level enhancement that had been applied in fashioning a defendant's sentence and making him eligible for modification pursuant to 18 U.S.C.S. §3582(c)(2) hearing, that the federal district court should resentence him using an advisory scheme. It declined to do so, and on appeal, the Federal Court of Appeals vacated, finding that the application of the Guidelines pursuant to Booker, was always advisory and that the district court could have sentenced defendant below the advisory range had it been appropriate. Moreover, in the present case, Mr. Cox seeks the very same standard of review once this court applies the new Guideline Amendment to §2D1.

Issue Number Three

For the Court to make the factual finding that Movant distributed Crack Cocaine alleged by the Government; and to consider that fact in determining his sentence, would violate the principles of the Ex Post Facto and the Sixth Amendment.

In all cases involving offenses committed before the date Booker was decided (01-12-05), ex post facto principles inherent in the Due Process Clause, taken together with Booker's Sixth Amendment ruling, should bar courts from imposing a sentence any greater than "Blakely-ized" guideline range -- the range as calculated only on the basis of facts proven to the jury beyond a reasonable doubt or admitted by the defendant. Therefore, this Court's judicial determination that Mr. Cox distributed "Crack Cocaine" and not just plain cocaine base, should be excluded.

This argument proceeds in two distinct steps; The first step is due process and ex post facto argument that any increase in the sentencing range cannot be applied retroactively. The second step is to apply Booker's Sixth Amendment ruling to the calculation of that mandatory Guideline range. This step establishes that the sentence can be no higher than the range as calculated based upon the facts proven to and found by the jury or admitted by the defendant. Thus, the first step establishes what can be referred to as a "due process/ex post facto ceiling" for sentence; and the second step sets a "Sixth Amendment ceiling" for the sentence based on Booker.

**Step One - The Ex Post Facto Ceiling:**

Although the Ex Post Facto Clause of the Constitution, by it's terms, applies only to acts by the legislature and not the judici-

ary, the Supreme Court has made clear "that limitations on ex post facto judicial decision-making are inherent in the notion of due process". Rogers v Tennessee, 532 U.S. 451, 456 (2001); U.S. Const. Art. 1, Sec. 9, Cl.3.

As the Court explained in Bouie v City of Columbia, 378 U.S. 347, 353-54(1964), "if a . . . legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow [the Court]. The Court is barred by Due Process from achieving precisely the same result by judicial construction." Id

The Due Process Clause imposed a limitation on ex post facto judicial construction because it contains the basic principle of "fair warning". Rogers Id. at 457. "Deprivation of the right to fair warning, . . . can result from. . . an unforeseeable and retroactive judicial expansion of statutory language that appear narrow and precise on its face." (Citing Bouie, Id. at 352). In Rogers, the Court held:

> If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law in which has been expressed prior to the conduct in issue, [the construction] must not be given retroactive effect.

(Quoting Bouie).

The Booker remedy of advisory Guidelines raised due process/ex post facto concerns. These due process and ex post facto principles come into play here because the remedial majority in Booker, through its new interpretation of the Sentencing Reform Act, effectively raised the maximum penalty that may be imposed for federal crimes by eliminating the mandatory nature of the Guidelines. As Booker makes clear, under the mandatory federal guideline system, the "Statutory Maximum" sentence was the to of the Guideline range. 125 S.Ct at 749 (quoting Blakely, 124 S.Ct. at 2537).

It should be noted that long before Booker that every circuit recognized that because of the Mandatory nature of the Guidelines, any amendment that would raise a defendant's guideline range could not be applied to conduct occurring before the amendment took effect without violating ex post facto principles. See e.g. United States v Smith, 930 F.2d 1150, 1152 n.3 (10th Circuit).

These decisions were based upon the Supreme Court's decision in Miller v Florida, 482 U.S. 423 (1987), which held that retroactive application of Florida's revised sentencing guidelines violated Ex Post Facto Clause. As the Court explained, ex post facto concerns are implicated by "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed. Id. at 429 (quoting Calder v Bull 3 U.S. 386, 390 (1798).

The remedial majority in Booker, by exercising the provision that had made the guidelines mandatory, raised the maximum punishment from the top of the guideline range to the maximum allowed under the statute defining the offense. This new judicial interpretation of the sentencing Reform Act expands the criminal penalty for all federal crimes, and cannot be applied retroactively to detriment of defendants in cases involving crimes committed before Booker.

However, to state the argument in terms of the due process requirement of "notice", before Booker, defendants were on notice by virtue of the plain language of the statute, PSI, and case law that the guidelines were binding, and thus absent, aggravating circumstances as defined in the Guidelines, the judge could not sentence above the top of the applicable guideline range. Booker unexpectedly struck down that binding language, and thereby raised

the maximum sentence that could be imposed as Miller makes clear, Congress could not have made such a change to the Guidelines retroactive by virtue of the Ex Post Facto Clause, and the Courts cannot make such a change retroactive by virtue of the Due Process Clause. See, United States v Marks, 430 U.S. 188, 191-92 (1977).

This first step, taken by itself, establishes a due process/ex post facto ceiling for the sentences for pre-Booker offenses. This ceiling is the top of the guideline range as it would have been calculated before Booker -- under the mandatory guideline system with judicial fact finding.

**Step Two -- Booker's Sixth Amendment Ruling:**

The second step is analytically separate from the first - determining what sentence can be imposed for offenses committed pre-Booker under the mandatory guidelines that were in effect, taking into account Booker's Sixth Amendment ruling. In accordance with the Sixth Amendment, under a mandatory guideline system the guideline range can be based only on facts found by the jury or admitted by the defendant.

In other words, defendants whose offenses occurred pre-Booker get the benefit of Booker's Sixth Amendment ruling but avoid any detrimental effect of Booker's remedy ruling. Defendants need not choose between their constitutional right; they are entitled to have both their due process and their Sixth Amendment rights respected. Applied to Mr. Cox's case, since the jury in his case did not determine/make a finding that Mr. Cox distributed "Crack Cocaine" nor a finding of drug quantity in relation to what this court has sentenced him to -- the court should have been precluded from making these findings of facts in order to increase Mr. Cox's punishment. As the

Court stated in Booker:

> any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by plea of guilty or jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Booker, 125 S.Ct. at 756

This principle has been previously embraced by the Supreme Court. In Ring v Arizona, the Court cited their decision in Apprendi when they ruled that:

> The dispositive question, we said, "is one not of form, but of effect." If a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, the fact - no matter how the state labels it - must be found by a jury beyond a reasonable doubt. A defendant may not be "exposed . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.

Ring v Arizona, 536 U.S. 584 (2002)

**CONCLUSION**

Thus, due process and ex post facto principles, when applied together with Booker's Sixth Amendment ruling require that Mr. Cox's offense conduct, committed prior to Booker, not exceed the Sixth Amendment ceiling - the top of the Guideline range as calculated based only on facts proven to a jury or admitted by the defendant. The Sixth Amendment/ex post facto due process principles mandate that Mr. Cox be sentenced without the judicial fact finding that the drug quantity and drug type "crack cocaine" occurred.

For the forementioned reasons, Mr. Cox suggests that his sentence should be Vacated and Set Aside within his initial §2255.

Respectfully Submitted,

Date:

Jason Cox /pro se

# CERTIFICATE OF SERVICE

I, Jason Cox, do hereby certify under the penalty of perjury (28 U.S.C. §1746) that I have served a true and correct copy of the following document(s):

Motion For Leave To Amend 28 U.S.C. 2255 Motion To Vacate, Set Aside, or Correct Sentence.

which, pursuant to Houston v. Lack, 487 U.S. 266, 101 L.Ed. 2d 245, 108 S.Ct. 2379 (1988), is deemed filed at the time it was delivered to prison authorities for forwarding to the court and service upon parties to litigation and/or their attorney(s) of record.

I have place the material referenced above in a properly sealed enveloped with first-class postage (stamps) affixed and I addressed it to:

The Clerk Of the Court
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

and deposited said envelope via hand delivered to the Mail Room Staff at the United States Penitentiary Pollock, LA, on this 3 day of Feb 2008.

Respectfully submitted,

Jason Cox
Reg. No. 40224-050
U.S. Penitentiary Pollock
P.O. Box 2099
Pollock, LA 71467